# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1)  UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | CIV-24-300-D |
| **-vs-** | ) | **MISC. 64** |
| | ) | |
| **2) $49,000.00 IN UNITED STATES** | ) | |
| **CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, alleges the following:

## NATURE OF THE ACTION

1.      Plaintiff, United States of America, alleges for this *in rem* forfeiture action brought against United States currency in the amount $49,000.00 ("Defendant Currency") that Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) for violations of 21 U.S.C. §§ 841 and 846.

## THE DEFENDANT *IN REM*

2.      Defendant Currency consists of $49,000.00 in United States Currency seized by the Federal Bureau of Investigation ("FBI") during a traffic stop at northbound I-235 and Britton Road in Oklahoma City, Oklahoma, on September 26, 2022.  The traffic stop occurred within the Western District of Oklahoma.

3.     Defendant Currency is currently in the custody of the United States Marshals Service (USMS) within the Western District of Oklahoma, where it shall remain subject to this Court's jurisdiction during the pendency of this action.

4.     On September 25, 2023, Eddie Matul-Hernandez ("Hernandez") filed a claim of ownership to Defendant Currency with the FBI to contest the administrative forfeiture of the Defendant Currency.

## JURISDICTION AND VENUE

5.     Plaintiff brings this action *in rem* to forfeit and condemn Defendant Currency.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and the Court has jurisdiction over a civil forfeiture action under 28 U.S.C. § 1355(a).

6.     This Court has *in rem* jurisdiction over Defendant Currency according to 28 U.S.C. § 1355(b), providing that a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.

7.     Venue is proper in this district pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district.  Furthermore, venue is also proper here pursuant to 28 U.S.C. § 1395, because the property is located in this district.

## BASIS FOR FORFEITURE

8.     The United States alleges that Defendant Currency is subject to forfeiture to the United States because it is the proceeds of criminal activity.  Specifically, the United

2

States alleges that Defendant Currency is forfeitable to the United States under 21 U.S.C.

§ 881(a)(6) for violations of 21 U.S.C §§ 841 and 846.

9.     Title 21, United States Code, Section 881(a)(6) provides the following shall

be subject to forfeiture to the United States and no property right shall exist in them:

> All moneys, negotiable instruments, securities, or other things
> of value furnished or intended to be furnished by any person in
> exchange for a controlled substance or listed chemical in
> violation of this subchapter, all proceeds traceable to such an
> exchange, and all moneys, negotiable instruments, and
> securities used or intended to be used to facilitate any violation
> of this subchapter.

10.    Title 21, United States Code, Section 841 makes it a crime for any person to

knowingly possess a controlled substance with intent to distribute that controlled

substance.

11.    Title 21, United States Code, Section 846 makes it a crime to conspire to

violate a provision of Title 21.  That is, Section 846 provides that any person who attempts

or conspires to commit any offense defined in that subchapter shall be subject to the same

penalties as those prescribed for the offense, the commission of which was the object of

the attempt or conspiracy.

## **FACTS**

12.    In April 2022, the Oklahoma City Police Department ("OCPD") and the FBI

Oklahoma City Field Office began a joint investigation into El Rincon Chapin, a business

in Norman, Oklahoma, and El Rincon Chapin's role in laundering drug proceeds for a

Mexican-based drug trafficking organization ("DTO").  El Rincon Chapin consisted of a

restaurant and a convenience store, which were connected to one another.  The convenience

3

store included a money remitter service that conducted international wire transfers.  El Rincon Chapin was operated by brothers Jose Cifuentes and Juan Cifuentes.

13.     During the investigation, law enforcement developed multiple cooperating defendants and a cooperating source that discussed illegal activities conducted by Jose Cifuentes and Juan Cifuentes via El Rincon Chapin.  For instance, in April 2022, law enforcement developed a cooperating defendant (CD1).  CD1 stated that he/she operated a methamphetamine conversion lab and once the drugs manufactured therein were sold, CD1 said that he/she was instructed to deliver drug proceeds to El Rincon Chapin.  In one two-month period, CD1 advised that he/she delivered approximately $100,000.00 in drug proceeds to El Rincon Chapin.  In May 2022, FBI developed a second cooperating defendant ("CD2").  According to CD2, he/she distributed pound- and kilogram-quantities of methamphetamine, and once distributed, delivered the proceeds to either Jose Cifuentes or Juan Cifuentes at El Rincon Chapin.  The amount of drug proceeds delivered on each occasion ranged from $13,000.00 to $21,000.00.  In June 2022, FBI developed a third cooperating defendant ("CD3").  On more than ten occasions, CD3 delivered drug proceeds to El Rincon Chapin, each occasion ranging from $7,000.00 to $60,000.00.  As the investigation continued, agents developed additional sources that were involved in delivering drug proceeds to El Rincon Chapin, corroborative of the information provided by the cooperating defendants.

14.     Based upon statements from the cooperating defendants, investigators began surveilling El Rincon Chapin, as well as the residences of Juan Cifuentes and Jose Cifuentes.  Early into surveillance efforts, it became apparent that Juan Cifuentes and Jose

Cifuentes were not only involved in drug-related money laundering activities, but were also facilitating the unlawful smuggling of migrants into the United States.  For instance, on July 31, 2022, a pole camera focused on Juan Cifuentes's residence located at 1719 NW 14th Street in Oklahoma City, Oklahoma, captured the arrival of two white cargo vans bearing Texas license plates carrying more than 30 people, both males and females of varying ages, all believed to be migrants.  The vans backed into Juan Cifuentes's driveway and parked sideways, parallel to the fence with the unloading doors positioned directly in front of the gate.  The people were then quickly directed out of the vans, through the gate, and into the house out of view.  Later that same day, and after the vans departed, a sedan began picking up small groups of people from Juan Cifuentes's residence.  At that time, investigators were unable to capture the characters on the license plate attached to the sedan using the pole camera.  However, on the doors of the sedan were marketing stickers with a visible phone number.  Based on open-source reporting, law enforcement learned that the number resolved to a residence located at 1337 NW 95th Street in Oklahoma City, Oklahoma.  Physical surveillance in the first half of August 2022 revealed several vehicles present at the residence, including three vehicles with "Hernandez Remodeling and Paint" decals.  The vehicles were registered to Irma Matul Gonzalez and Julio Matul Hernandez.

15.    Less than two months later, on September 14, 2022, United States District Judge Jodi W. Dishman authorized the interception of oral and non-verbal communications taking place within certain areas of El Rincon Chapin through the covert installation of recording devices within that business.  During monitoring of the recording devices, law enforcement confirmed information provided by the cooperating defendants and observed

several bulk cash deliveries to the store; investigators confirmed that the currency was later structured by Juan Cifuentes and Jose Cifuentes and then wired to DTO members in Mexico and elsewhere.

16.     While monitoring the audio and video recording devices, on September 26, 2022, at approximately 2:07 p.m., investigators intercepted a conversation between Juan Cifuentes and a person Juan Cifuentes addressed as "Gordo."  During the conversation, Juan Cifuentes told "Gordo" that he had "it" if Gordo wanted to pick "it" up at Juan Cifuentes's house around 9:30 p.m.  Later that night, law enforcement established physical surveillance at Juan Cifuentes's residence located at 1719 NW 14th Street in Oklahoma City, Oklahoma.  At approximately 9:40 p.m., law enforcement observed a red Toyota Sienna minivan bearing Oklahoma license plate KZD535 arrive at Juan Cifuentes's residence and park in the driveway.  The vehicle was registered to Emilo De Leon Perez at 537 NW 114th Street in Oklahoma City, Oklahoma.  Utilizing the pole camera focused on the front of Juan Cifuentes's residence, investigators were able to observe Juan Cifuentes meet with a male, later determined to be Hernandez.  Juan Cifuentes handed Hernandez a white gift bag.  After the two spoke for a brief period, Hernandez then placed the gift bag in the Toyota Sienna and departed the residence.

17.     Law enforcement physically surveilled Hernandez, following as he drove the Toyota minivan from the residence northbound on Broadway Extension in Oklahoma City. After observing as Hernandez committed a traffic infraction, an OCPD officer initiated a traffic stop near Broadway Extension and Britton Road.  Hernandez was driving the vehicle and Blanca Judith De Leon Perez, Hernandez's wife, was seated in the passenger seat.

When asked, Hernandez could not produce a driver's license. Instead, he presented officers with a Guatemalan identification card. While conducting routine checks, the officer engaged Hernandez in casual conversation. Hernandez told the officer, among other things, that he had gone to a friend's house to pick up papers with a list of cars for auction. When asked if Hernandez had any large sums of cash currency, Hernandez told the officer he had $49,000.00 that he was going to use to purchase cars at auction. Hernandez gave officers consent to search the vehicle. During a search, officers found $49,000.00 in bundled United States currency (the "Defendant Currency") located in a white gift bag inside the vehicle behind the front seats. While speaking to the officer about the Defendant Currency, Hernandez changed his story and stated that he had picked up the Defendant Currency and that it was proceeds from selling cars in Guatemala. However, Hernandez did not have any documentation associated with the Defendant Currency or the sale of any vehicles. During this time, Hernandez's brother, Isaac Amilcar Matul-Hernandez, arrived on scene and when asked by law enforcement what Hernandez did for a living, he told the officer that Hernandez worked in construction and painted houses.[1] The brother was not

---

[1]       As noted *supra*, a phone number from a marketing decal on a vehicle that picked up migrants at Juan Cifuentes's residence was found to be associated with an address where several vehicles were seen bearing "Hernandez Remodeling and Paint" decals. A search of a law enforcement financial database revealed that Hernandez used 537 NW 114th Street in Oklahoma City, Oklahoma, the same address from the Toyota Sienna registration, to conduct multiple wire transfers in 2019 and 2020. The vehicle registrants, Irma Matul Gonzalez and Julio Matul Hernandez, are believed to be family to Hernandez. Investigators have advised that based upon their training and experience, the comment to the officer from Hernandez's brother, as well as the additional information provided herein, that they believe that Hernandez utilized the same business marketing decals on at least one vehicle that was used to transport illegal migrants from Juan Cifuentes's residence in late July 2022.

aware that Hernandez bought and sold vehicles as represented by Hernandez to the officer. Based on Hernandez's lack of documentation and the inconsistent stories, officers seized the Defendant Currency and released Hernandez from the stop.

18.     The following day, on September 27, 2022, investigators intercepted a phone call between Juan Cifuentes and a person believed to be Juan Cifuentes's mother.  During the conversation, Juan Cifuentes recounted the traffic stop and stated that the police almost let Hernandez go, but that he admitted to having the Defendant Currency.  Juan Cifuentes confirmed that law enforcement seized $49,000.00 and told his mother that there was no way Hernandez could provide receipts for the Defendant Currency.  Juan Cifuentes told his mother that Hernandez was lucky and could have been arrested and received 10 years in prison.  Juan Cifuentes further explained that the Defendant Currency belonged to "Mencho."  Juan Cifuentes's mother ended the conversation by stating that Hernandez would have to work double hard to make up for the loss.

19.     On June 27, 2023, after completion of the wiretap at El Rincon Chapin and follow-up investigative activity, law enforcement conducted a take-down and executed six search warrants related to the money laundering activities of Juan Cifuentes, Jose Cifuentes, and their associates.  Juan Cifuentes, as well as two additional subjects, were arrested and federally indicted for money laundering.[2]  For his part, Juan Cifuentes has

---

[2]     After Juan Cifuentes was arrested, officers executed a search warrant on his phone, which revealed he was engaged in WhatsApp communications with Hernandez.  While the communications lack context, they indicate that during a March 2023 conversation the two were discussing money, with Hernandez stating, "No, it's best not to because I also have to pay over there to do the actions."  Note, these communications were in Spanish.  An FBI-certified linguist provided the translations.  Based on their training and experience,

pled guilty to engaging in a money laundering conspiracy and his sentencing is pending. Jose Cifuentes was in Guatemala at the time of the enforcement activity and remains a fugitive from justice.

20.     After the takedown, in October 2023, law enforcement confirmed via various sources that Hernandez was involved in the smuggling of illegal aliens into the United States.  Sources advised that to facilitate his part in the operation, Hernandez used several minivans, with one source specifically stating that at least one of the vans was red in color. As noted *supra*, Hernandez was driving a red-colored Toyota Sienna minivan when law enforcement observed him pick up the Defendant Currency from Juan Cifuentes.

---

investigators have advised that they believe Hernandez was referencing having to pay money to someone in a different country before they assisted in performing a task.  Further, based upon the collective information provided herein, investigators believe that the referenced task was related to human smuggling.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in Defendant Currency; that Defendant Currency be forfeited to the United States; that Plaintiff be awarded its costs and disbursements in this action; and the Court order any such other and further relief as this Court deems proper and just.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/ Danielle M. Connolly
DANIELLE M. CONNOLLY
Assistant United States Attorney
Oklahoma Bar Number: 33148
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Office: (405) 553-8700
Fax: (405) 553-8888
danielle.connolly@usdoj.gov

## **VERIFICATION**

I, Edward D. Porter, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint of Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true of my own knowledge, except those matters therein stated to be alleged on information and belief of other agents and law enforcement officers; as to those matters, I believe them to be true.  The sources of my knowledge and information and the grounds of my statements herein are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case together with investigation by other law enforcement officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on   MARCH 25,        , 2024.



Edward D. Porter, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 25ᵗʰ day of March        , 2024.

NOTARY PUBLIC

Attachment 1